Ricky THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 972–86.

Court of Criminal Appeals of Texas,
En Banc.

June 22, 1988.

John H. Hagler, on appeal only, Dallas, for appellant.

Henry Wade, Former Dist. Atty., John Vance, Dist. Atty., and Patricia Poppoff Noble, Kathleen A. Walsh, Lana McDaniel and Bruce Isaacks, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record reflects that Ricky Thomas, henceforth appellant, was convicted by a jury of felony theft (third degree) of an automobile, a 1985 Ford LTD, hereafter "Ford LTD", which was alleged to have belonged to Fred Reed, who was then the manager of Snappy Car Rental Company of Garland. Henceforth, we will refer to the latter as "Snappy". The trial judge assessed appellant's punishment, enhanced with one prior felony conviction for burglary of a habitation, at eight (8) years confinement in the Department of Corrections. On appeal, the Dallas Court of Appeals sustained appellant's third point (nee ground) of error, that "The evidence is insufficient to prove an 'intent to deprive' at the time of the taking". The Court found that the evidence was insufficient to prove an "intent to deprive". It reversed the trial court's judgment in an unpublished opinion and ordered that an acquittal be entered on appellant's behalf. See *Thomas v. State*, No. 05–85–01172, August 7, 1986. We will vacate the judgment of the court of appeals and remand this cause to that court for further proceedings not inconsistent with this opinion.

The indictment, which was filed on February 28, 1985, in relevant part alleges that appellant, on or about December 15, 1984

did then and there unlawfully knowingly and intentionally appropriate property, namely: exercise control over property, other than real property, to-wit: an automobile, of the value of at least $750.00 but less than $20,000.00, without the effective consent of F. REED, the owner of

the said property who had a greater right to possession of the said property than the defendant, with the intent to deprive the said owner of the said property, namely: to withhold the said property from the said owner permanently, and such appropriation was without effective consent since no assent in fact was given by the owner or a person legally authorized to act for the owner.

The State's evidence established that on December 10, 1984, appellant entered into a rental car agreement with one of Snappy's employees for a 1985 Ford LTD. This vehicle is one and the same vehicle that appellant is alleged to have stolen from Reed, Snappy's manager. Appellant represented that he needed a rental car to temporarily replace his vehicle which was then undergoing repairs for damages sustained when appellant's vehicle had an accident with another vehicle. The owner of the other vehicle's liability insurance carrier agreed to pay and did pay the rental cost until December 26, 1984, when it refused to continue making the payments. Because of this, demand was made of appellant by employees of Snappy that the vehicle be returned to Snappy. After the vehicle was not returned on December 26, 1984, Snappy's employees made unsuccessful efforts to locate the vehicle. On January 22, 1985, a report was made to the Dallas Police Department that the vehicle had been stolen by appellant.

Over objection, the State was permitted to show that during the time when Snappy's employees were attempting to locate the 1985 Ford LTD, on January 12, 1985, appellant entered into another rental car agreement with J. Steven Fleming, an employee of Trans–National Leasing Company, henceforth "Trans–National", for a 1984 Ford Tempo, which agreement was to last until January 18th, but was later extended until January 21st. Another insurance company agreed to pay and did pay the rental cost on this vehicle until January 21st when it refused to continue making the payments. Unsuccessful efforts were commenced by Trans–National's employees

on that day to reobtain possession of the vehicle. On January 22, 1985, this vehicle was involved in an accident. When contacted about the accident, appellant told Walter Ward, the supervisor of Trans–National, that he had loaned the vehicle to Ray Clayton (this person's name may be Ray Charleston, rather than Ray Clayton, but as the record more often refers to him as Ray Clayton than Ray Charleston, we will use the name Ray Clayton), apparently a friend of appellant's, who was driving the vehicle with appellant's consent when the accident occurred. Evidencé was adduced that the driver of the other vehicle, Cecil Carey, took the keys from the Ford Tempo, took possession of same, and retained possession until March 22nd when an employee of Trans–National recovered the vehicle from the Dallas Police Department's compound. We are not privy to the details why Carey seized the vehicle as he did, or why he retained possession of same as long as he did.

On January 31, 1985, Snappy's employees finally located Snappy's Ford LTD vehicle at the Dallas Police Department's compound. Since appellant obtained possession of the vehicle it had been driven almost 12,000 miles. The vehicle ended up at the compound as a result of the following events.

On January 30, 1985, Dallas Police Officer Daniel Patterson and his partner Officer Morrell, who were then on patrol duty, stopped a vehicle driven by Leon Bertram, who was then alone, for speeding. There is a tenuous suggestion in the record that Bertram may then have been appellant's employer, Bertram's Trucking Company. Patterson contacted his dispatcher and asked the dispatcher to look on the "hot sheet" to see if the vehicle had been reported missing. After not hearing back from the dispatcher for a reasonable period of time, Patterson then warned Bertram about his speeding, after which Bertram drove off. Soon thereafter, Patterson's dispatcher notified Patterson that the vehicle had been reported stolen. Patterson and Morrell then pursued the vehicle, stopped it, and arrested Bertram, for "investigation of unauthorized use of a motor vehicle." Bertram, however, was never formally charged. Patterson had the vehicle taken to the police storage lot, where it remained until it was released to an employee of Snappy's. Thereafter, appellant was indicted, tried, and convicted of felony theft of the Ford LTD.

On direct appeal, appellant made a three prong sufficiency attack on his conviction.

■ Appellant first asserted that the evidence was "insufficient to prove that he knowingly or intentionally appropriated the automobile." We find appellant's argument under this contention suggests a rather fundamental misunderstanding of our theft statute and of the definitions which apply to it. The term "appropriate" refers, among other things, to any "exercise [of] control over property other than real property." Penal Code, § 31.01(5)(B). Yet, in arguing his contention, appellant does not maintain, nor could it conceivably be logically maintained by anyone, that he did not exercise control over the Ford LTD at some point. Moreover, appellant does not appear to argue that his exercise of control over the vehicle was somehow unwitting or unintentional in the sense that he had no "conscious objective" to control the vehicle and was "unaware" of doing so. See Penal Code, § 6.03(a), (b), which provides for the definitions of the culpable mental states of intentionally and knowingly. By process of elimination, therefore, it is possible that, in asserting that there was no proof of "criminal intent," appellant may be arguing that his appropriation of the vehicle was not shown to be "unlawful." If so, we find that appellant's brief is inartfully drawn.

We pause to point out that in *Reynolds v. State*, 547 S.W.2d 590, 595 (Tex.Cr.App. 1977), this Court on State's motion for rehearing pointed out the following, regarding the use of the term "unlawfully", which is defined in Penal Code § 1.07(a)(36) as meaning "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege", in the indictment or information: "the allegation of 'unlawfully' pleads only a conclusion of law omit-

ting the facts necessary to that conclusion. The notice requirements of an indictment under the Texas Constitution (Art. I, § 10, Texas Constitution) are not met by that allegation." (595).

■ Appellant next asserted on appeal that the evidence was insufficient because the most that the evidence established was that he only intended to withhold the vehicle temporarily. In support of his argument that a temporary withholding of corporeal personal property does not "deprive" the actual owner of the property, appellant refers us to this Court's opinion of *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr. App.1981). We find appellant's reliance upon *Griffin,* supra, as authority to support this contention, misplaced. *Griffin,* supra, merely redefined the non-statutory term "temporary" to mean "less than extended" instead of "less than permanent." Our present Penal Code defines the term "deprive" as follows: "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." Penal Code, § 31.01(3)(A). As explained in *Griffin,* supra: "The only change made by the present Penal Code is that the concept of temporary holding has been reduced, from anything less than permanent, to something shorter than 'for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.'" (158). Whether appellant intended to withhold the vehicle from Reed, Snappy's manager, for a sufficiently extended period of time is not, however, a meaningful issue in the instant cause since the State chose to allege in the indictment that appellant intended to withhold the property "permanently". Beyond this observation, we leave to the court of appeals on remand other issues of sufficiency, if any, raised by appellant's second point of error.

Appellant asserted in his third point of error that the evidence was insufficient because it would not support the conclusion that he acted with intent to deprive Reed of the Ford LTD at the time when he obtained

possession of it through the rental car agreement with Snappy. The court of appeals agreed with appellant and, accordingly, reversed the trial court's judgment of conviction and ordered that a judgment of acquittal be entered on appellant's behalf.

Finding that several deficiencies exist in the court of appeals' analysis of appellant's third contention, we granted the State's petition for discretionary review.

Because we will remand this cause to the court of appeals for further evidentiary review, we must first place this cause in a proper legal perspective so that the sufficiency of evidence to support appellant's conviction for felony theft of the Ford LTD, as alleged in the indictment, can be measured against an accurate understanding of the offense charged, as defined by the Legislature of this State.

## I.

In his brief before the court of appeals, urging the very error upon which that Court reversed his conviction, appellant's argument begins with the following analysis:

As previously stated, the Appellant was charged with the commission of theft by unlawful appropriation of property without the consent of the owner. Further, Section 31.03(4)(A), Texas Penal Code, states, in part: "Consent is not effective if ... induced by deception or coercion." In turn, the term "deception" is defined by statute. Section 31.01(2), Texas Penal Code. The State necessarily was proceeding on the theory that the consent was ineffective due to deception.

The indictment in this cause alleged that the automobile was appropriated without Reed's effective consent in that "no assent in fact was given by the owner or a person legally authorized to act for the owner." The jury was instructed accordingly.

■ "[A]ssent in fact, whether express or apparent" is the definition given for the term "Consent" by Penal Code § 1.07(a)(9), and is applicable to the statutory definition of theft under Penal Code § 31.03(b)(1). Appropriation of property is "without the

owner's effective consent" if either (1) it is without his "assent in fact" or (2) his "assent in fact" is rendered ineffective by one or more of the circumstances listed at Penal Code § 31.01(4), including "deception." Cf. Penal Code § 1.07(a)(12). However, the State need not allege in its indictment which of these circumstances it will seek to prove at trial. See *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1981) (Opinion on State's motion for rehearing), which holds that a charging instrument is sufficient if, in addition to other elements of the offense, it merely alleges that appropriation was accomplished "without the owner's effective consent." An absence of effective consent is necessary to render the appropriation of property unlawful. *McClain v. State*, 687 S.W.2d 350 (Tex.Cr.App.1985).

■ Here, however, the State chose to allege an absence of effective consent by charging that appellant had no "assent in fact." This represents a more specific allegation of that which the State must prove than is required by the rules of pleading in criminal cases. See *Thomas*, supra. As such, it is not merely surplusage in the indictment, and the State was required to conform its trial proof to the allegation. See *Wray v. State*, 711 S.W.2d 631 (Tex.Cr. App.1986); *Burrell v. State*, 526 S.W.2d 799 (Tex.Cr.App.1975). In this connection, the evidence is undisputed and the parties evidently agree that, *on* the date alleged, December 15, 1984, appellant's right to possess the vehicle in question was controlled by a rental agreement. This agreement clearly establishes, if nothing else, that appellant had the owner's "assent in fact" to "exercise control" over the car *on* December 15, 1984, the date he is alleged to have stolen it.

But the State's theory that appellant was entitled to use of the vehicle based upon his promise to return it when due does put one very much in mind of Penal Code § 31.01(2)(E), wherein a kind of "deception" sufficient to render consent ineffective is

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not

intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

Nevertheless, because the State alleged and therefore was required to prove that appellant appropriated the vehicle without the owner's "assent in fact," the theory that he induced the owner's assent in fact by "deception" was effectively foreclosed by the pleadings. In short, if the State was indeed proceeding upon a theory of deceptive appropriation, such theory was evidently inconsistent with that alleged in the indictment.

Appellant, however, did not expressly challenge sufficiency of the evidence to prove that he acted without the owner's assent in fact—at least not in his third point of error. Rather, he argued to the court of appeals, under this point of error, that the evidence was insufficient to prove he intended to deprive Reed, Snappy's manager, of his property on the date of the alleged appropriation. Appellant's argument under this point of error concluded as follows:

> In *Wilson v. State*, 663 S.W.2d 834 (Tex. Cr.App.1984) the Court stated: "Relevant intent to deprive the owner of property is the accused's intent at the time of the taking." See also *Peterson v. State*, 645 S.W.2d 807 (Tex.Cr.App.1983). [It should be noted that the State chose not to proceed under the penal statute providing for theft of service (namely: control of personal property held under a written rental agreement). See Section 31.04(a)(3), Texas Penal Code.] Accordingly, a judgment of acquittal must be entered.

Together with his comments regarding "deception," we find this represents appellant's entire argument that "intent to deprive" was insufficiently proven at trial.

Although "intent to deprive" is a statutory element of theft analytically distinct from the absence of effective consent, both parties and the Dallas Court of Appeals

seem to have accepted the proposition that appellant's control of the motor vehicle during periods covered by the rental agreement, i.e. when he had the owner's consent to possess it, did not constitute a deprivation within the meaning of our theft statute. As the court of appeals opined:

> [n]o evidence of any contractual wrong doing is shown until after December 26, 1984, when appellant failed to return the car.... The evidence presented is insufficient to show that appellant initially rented the car with intent to appropriate and, therefore, the judgment must be reversed. [Slip Opinion p. 5]

◼ The contested issue is, of course, "intent to deprive," not "intent to appropriate." [1] Moreover, the relevant date, "on or about December 15, 1984," is not necessarily when "appellant initially rented the car," December 15, 1984, but might be any date on which appellant exercised control [2] over it without the owner's effective consent, within five years prior to when the indictment was filed in this cause, February 28, 1985. Where an indictment alleges that some relevant event transpired "on or about" a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations. See *Ex parte Alexander*, 685 S.W.2d 57 (Tex.Cr.App. 1985) and *Williams v. State*, 565 S.W.2d 63 (Tex.Cr.App.1978), which hold that proof of a date within the limitations period but other than that alleged does not amount to a variance which will threaten the validity of any ensuing conviction.

In the instant cause, the alleged date of December 15, 1984 was within the period of limitations prescribed for the offense with which appellant was charged. [3] See Art. 12.01(e)(A), V.A.C.C.P. Therefore, assuming that at any time within five years prior to the date of indictment in this cause, February 28, 1985, including but not limited to December 15, 1984, the appellant exercised control over the vehicle in question without Reed's assent in fact (none of which is expressly challenged), the only issue apparently raised on appeal is whether he did so with "intent to deprive" Reed of it "permanently."

◼ That the rental contract authorized appellant to withhold the vehicle from Reed for an agreed period of time does not control the issue of appellant's intent. Certainly, compliance in fact with contractual terms would be relevant to the issue and militate in favor of a finding that appellant intended to comply, just as noncompliance in fact would militate in favor of a finding that he did not intend to comply. Under many conceivable circumstances it is permissible for a rational factfinder to infer that the earlier intention of an accused was to do precisely what he later did in fact. But the offensive element here in question does not require proof that Reed was actually deprived of the Ford LTD on or about the date alleged—only that appellant intended on or about that date to deprive Reed of it, in this case "permanently." See *Rowland v. State*, 744 S.W.2d 610 (Tex.Cr. App.1988). Thus, appellant could have been found guilty of theft as charged even for conduct occurring at times when his control of the vehicle was clearly not a violation of the rental contract (assuming he did not then have Reed's "assent in fact" to control it), so long as he intended

---

1. As observed, appellant might be attacking the sufficiency of evidence to prove "intent to appropriate" in his first point of error. We leave resolution of this question to the court of appeals on remand.

2. The indictment charged that appellant did "knowingly and intentionally appropriate property, namely: exercise control over property, other than real property ..."
"Appropriate" is defined by statute to mean, among other things, "to acquire or otherwise exercise control over property other than real property." Penal Code § 31.01(5)(B). Because

the State did not allege that appellant's acquisition of the vehicle was unlawful, it was not necessary for the State to prove unlawful appropriation on the date appellant "initially rented the car," as the Court of Appeals evidently supposed.

3. The jury was instructed and the prosecutor argued that it need only be proven that the car was unlawfully appropriated within five years of the date of the indictment. Appellant interposed no objection either to the jury instruction or to the argument.

at that time to withhold the car from Reed permanently. In short, the absence of "contractual wrong doing" is not dispositive of the issue raised by appellant's third point of error.

To perform an adequate sufficiency analysis, a reviewing court must be sensitive to the coalescence of elements comprising the statutory offense in question. But it must also realize that such elements are analytically distinct and address itself to the specific deficiency of proof to which its attention has been called. Clearly, in a theft prosecution, the "intent to deprive" must exist at a time when the accused does not have the effective consent of an owner to appropriate the property. Actual appropriation must also occur at that time, such that the act, the intention, and the relevant circumstances surrounding it are contemporaneous.

In the instant cause, we find that the State was obliged to prove, among other things, that appellant exercised control over the vehicle with intent to deprive Reed of it, that he did so without Reed's assent in fact, and that his intent to deprive was contemporaneous with an absence of assent in fact. Appellant, in his third point of error, expressly challenged the evidence only with respect to the first of these. Accordingly, for the evidence to sufficiently prove an "intent to deprive" under the indictment and jury instructions in this cause, the proof must support a rational inference beyond a reasonable doubt that, on some date within five years prior to indictment, appellant "exercise[d] control over" the vehicle in question with intent to "withhold [it] from [Reed] permanently."

It seems certain, in any case, that the court of appeals's sufficiency review was based upon several misreadings of the

theft statute which, in combination, rendered its analysis of the evidence questionable. On remand the court is directed to determine the precise nature of appellant's attack, and to evaluate the evidence in light of the statutory considerations set out in this opinion.[4]

## II.

Quite apart from questions of statutory construction implicit in the court of appeals's opinion, its review of evidentiary sufficiency was also methodologically unsound. As previously pointed out, at trial the State was permitted to prove over objection that appellant had been involved in a similar transaction shortly after the one for which he stood trial in this cause.[5] On appeal the State contended that this evidence was probative of appellant's "intent to deprive" the owner of his vehicle. The court of appeals responded to this argument as follows:

> Texas Penal Code § 31.03(c)(1) provides that evidence that the actor has *previously* participated in recent transactions other than, but similar to, that on which the prosecution is based is admissible only for the purpose of showing knowledge or intent. This December 1984, incident, however, is the first incident of its kind shown in the record and thus makes the subsequent January 1985, incident inapplicable for the purpose of supporting the conviction for theft of property. [Slip Opinion, p. 6 (emphasis in original)]

We read the court of appeals's holding to be that evidence of the extraneous transaction was inadmissible at appellant's trial because it transpired after the charged offense and, therefore, might not be considered by the court in its sufficiency re-

---

4. We express no opinion regarding the need for new or additional briefing in this cause, but merely call the Dallas Court of Appeals's attention to the fact that courts of appeals may require new or additional briefs under appropriate circumstances. See e.g., Tex.R.App.Proc. 74(h), (p).

5. Appellant's objection at trial claimed "surprise" and that the evidence was "inherently prejudicial," "tend[ed] to confuse the issues,"

and forced him to defend against unalleged charges, citing *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). He did not maintain that it was irrelevant, from which one might infer that he conceded its relevancy while maintaining that its probative value was outweighed by the danger of unfair prejudice. See now, *Tex.R. Crim.Ev.* 403, 404(b). The trial judge overruled the objection but allowed appellant additional time to prepare for any "surprise" witnesses.

view. We express no opinion whether the trial judge erred in refusing to exclude the evidence.[6] Such issue has not been raised on appeal, nor is its resolution necessary to a decision on those issues which have been raised.

■ In assessing the sufficiency of the evidence to support conviction, *a reviewing court must consider all evidence* which the jury was permitted, whether rightly or wrongly, to consider. *Beltran v. State*, 728 S.W.2d 382, 389 (Tex.Cr.App.1987); *Porier v. State*, 662 S.W.2d 602, 605–606 (Tex. Cr.App.1984). In the event a portion of this evidence was erroneously admitted, the accused may complain on appeal of such error. If his complaint has merit and the error is reversible, see Rule 81(b)(2), Tex.R. App.Proc., a new trial should be ordered. But jurors do not act irrationally taking such evidence into account, since they are bound to receive the law from the trial judge. All evidence which the trial judge has ruled admissible may therefore be weighed and considered by the jury, and a reviewing court is obliged to assess the jury's factual findings from this perspective.

In the instant cause, the only significant question as regards evidence of the extraneous transaction is whether and to what degree it had probative value on the issue of appellant's intent to deprive the owner of his automobile. The court of appeals erroneously refused to consider this evidence in its sufficiency review.

**6.** Whether Penal Code § 31.03(c)(1) authorizes admission of extraneous offenses under circumstances which are more restrictive or less restrictive in scope than our well-settled rules for the admission of such evidence generally, is not an issue necessary to decision in this cause.

Although in its appellate brief the State argued the significance of the extraneous offense to the issue of appellant's intent to deprive, it did not address the admissibility of such evidence under § 31.03(c)(1). Appellant, in his brief, did not claim the evidence was admitted erroneously, let alone in violation of § 31.03(c)(1). His only reference to the testimony was: "At the outset, the trial court and the State viewed the evidence as being weak since the extraneous offense was offered and admitted during the case-in-chief."

For all of the above reasons, the judgment of the court of appeals is vacated and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

WHITE, J., concurs.

ONION, P.J., and DUNCAN, J., dissesnt.

We point out that before 1985 evidence of similar recent prior transactions was admissible under (c)(1) *only* for "purposes of subsection (b)(2)," that is, theft by receiving stolen property. By Acts 1985, 69th Leg., ch. 599, p. 2244, § 1, effective *September 1, 1985*, the Legislature deleted "(2)" and thereby made (c)(1) applicable to all modes of appropriation declared "unlawful" in § 31.03(b). However, § 2 of the Act expressly provides that changes in the law made therein "applies only to an offense committed on or after the effective date of this Act," that an offense committed before the effective date is "covered by the law in effect when the offense was committed." Therefore, § 31.03(c)(1) is utterly irrelevant to any issue in this cause.