David **BARNES, Appellant,**

v.

The **STATE of Texas, Appellee.**

**No. 12–8800307–CR.**

Court of Appeals of Texas,
Tyler.

June 26, 1990.

Rehearing Denied July 31, 1990.

Odis R. Hill, Longview, for appellant.

David Brabham and Patrice Savage, Longview, for appellee.

COLLEY, Justice.

David Barnes was convicted of the offense of theft by a public servant[1] by a jury who assessed his punishment at a fine of $200.

Barnes presents two points of error by which he claims the trial court erred (1) in overruling his motion for instructed verdict and (2) in overruling his motion for new trial because the evidence is insufficient to establish that the misdemeanor offense was committed by Barnes within the two-year period of limitations fixed by Tex. Code Crim.Proc.Ann. art. 12.02 (Vernon 1977).

A fair summary of the evidence before the jury is as follows: Barnes was employed by Gregg County as Building Superintendent in 1975. His duties included overseeing the maintenance of County buildings and grounds, and the County Courthouse lawn or yard. Additionally, Barnes supervised employees working in those areas and was generally responsible for purchasing, upon the approval of the Gregg County Commissioners' Court, appliances and equipment necessary for the maintenance of the Gregg County buildings and grounds.

The record reveals that Barnes had determined in February 1985 that a new riding lawn mower was needed to replace a Snapper riding mower that had been purchased in 1981. Accordingly, he signed a county purchase requisition[2] addressed to Glynn's Lawn & Garden for the purchase of a new riding mower for the price of $1,253.96. Included in State's Exhibit 33 is a sales slip dated February 25, 1985, from Glynn's Lawn & Garden reflecting the credit sale of a "Snapper" mower to "Gregg Co. Courthouse." That sales slip was signed by Barnes and shows that the new mower was delivered to him on February 25, 1985. Exhibit 33 also includes an affidavit made by Barnes on a county form designed to accompany a county creditor's claim for payment. That affidavit contains Barnes' sworn statement that the claim of Glynn's Lawn & Garden for $1,253.96 is "just, true, and correct ... due and that all just and lawful offsets, payments and credits have been allowed...." Barnes also states in the affidavit "that the amounts charged in said account are in accordance with the contract price and correspond in every particular to the supplies or articles furnished;...."

State's Exhibit 22 is a copy of a letter from Barnes addressed to the County Judge and Commissioners' Court of Gregg County. The letter is dated March 4, 1985, and reads in part, "And now comes David Barnes, requesting, Snapper Lawn Mower Inventory # 1960 be deleted from the Gregg County Inventory list. *This item is a trade-in on the new Snapper Mower recently purchased.*" (Emphasis ours.) State's Exhibit No. 19, the minutes of the commissioners' court meeting held on March 11, 1985, shows that the commissioners' court then approved Barnes' request for deletion of the old Snapper mower, inventory # 1960, from the county's inventory of properties.

---

1. Pursuant to the act of June 19, 1975, ch. 342, § 10, and act of June 19, 1983, ch. 497, § 3, and ch. 558, § 11 (except for relettering in later amendments, these acts, in the aggregate, are identical to Tex. Penal Code Ann. § 31.03(a), (b)(1), (e)(2)(A), and (f) (Vernon 1989 and Vernon Supp.1990)).

2. A part of State's Exhibit No. 33.

According to Barnes' testimony before the Gregg County Grand Jury on March 23, 1988, which was introduced by the State as part of its case in chief, he first took the old mower "to Glen's Lawn & Garden Shop [sic]" in early March 1985. He testified that the owner of that business told him that he had no "room for it" and that "he didn't want the thing." Barnes stated that he then took the old mower to his house and placed it in his "back yard, and that's where it sat."

The evidence is undisputed that Barnes and one of his sons, as well as several employees in his department, mowed the grass in Barnes' yard with the riding mower at various times thereafter. It is likewise undisputed that Glynn Askew, the owner of Glynn's Lawn & Garden, did not accept the old mower as a trade-in nor did he give any credit therefor on the purchase price of the new mower purchased in February 1985.

Barnes further testified that he bought a new motor for the old mower and put the new motor on the old mower himself after the old mower's engine became inoperable.

The record reveals that on October 26, 1987, the Gregg County Sheriff's Department began an investigation into the facts and circumstances involved in this case. Deputy Sheriff Mike Claxton testified that after a preliminary investigation, he and the district attorney's investigator went to Barnes' home in Longview on November 6, 1987. He stated that when they arrived at Barnes' home, they advised him of their investigation and told him that they "needed his consent to search for a particular Snapper—mower ... that may be on his residence [sic]." Claxton testified that Barnes signed a written consent form authorizing the officers to search his "locked storage room in the back of his property...." Claxton said that Barnes himself unlocked the storage room door "and pulled out a Snapper riding lawnmower for our inspection."

Claxton further testified that he found no serial number and no "county inventory number" on the mower. Claxton testified that he seized the mower on that date. He also stated that he asked Barnes "where he got this particular mower...." According to Claxton, Barnes told him that "he'd bought it from an unknown man at the Gregg County Trade Days in Longview approximately three years ago."

Basically, Barnes argues that the theft offense was *complete* in March 1985, because the evidence shows that by that time he had appropriated the mower without the special owner's effective consent with the intent to deprive the owner of the mower "permanently or for such an extended period that the County would end up losing a major portion of the mower's value or enjoyment." Hence, Barnes claims that the prosecution for the offense was barred by limitations under Tex.Code Crim.Proc.Ann. art. 12.02 and art. 12.04 (Vernon 1977) (hereinafter referred to as articles 12.02 and 12.04).

The State responds that the theft offense here "is a continuing offense," and "[a]s long as [Barnes] exercised control over the ... mower with the intent to deprive the [owner] of its use he continued to appropriate the property in violation of the ... statute." In support of that argument, the State cites two Texas cases [3] and three foreign cases.[4] In our view, *Fernow* and *Reeves* are not in point here, because we are dealing with that part of the Texas statute relating to theft, not to possessing, receiving or concealing stolen property. *Smolka* is inapposite because it concerns attorney misconduct and venue questions. *Davis* is not in point because it concerns the law of estrays. Furthermore, *Thomas* does not support the State's argument either. In fact, *Thomas* suggests, as Barnes contends, that any correct analysis of the evidence to determine *whether* and *when* a theft offense is committed must take into account the point in time when a "coales-

---

**3.** *Davis v. State,* 2 Tex.Ct.App. 162 (1877), and *Thomas v. State,* 753 S.W.2d 688 (Tex.Cr.App. 1988).

**4.** *State v. Fernow,* 354 N.W.2d 438 (Minn.1984); *State v. Reeves,* 264 Ark. 622, 574 S.W.2d 647 (1979); and *Smolka v. Second District Committee, Etc.,* 224 Va. 161, 295 S.E.2d 267 (1982).

cence of [the essential] elements comprising the ... offense" exists. 753 S.W.2d at 694. That analysis deals with the *completeness* of the theft offense, not with a determination of the continuing nature thereof.

As we read *Thomas* we find no reasoning that would lead to the conclusion that the Texas Theft Statute defines a *continuing* offense. To the contrary, according to that case, theft, like all criminal offenses, is committed when all the elements of conduct prescribed by the statute are committed. The State argues that if a thief acquires property by exercising control of the property without the owner's effective consent with the intent to permanently deprive the owner of that property, he may be prosecuted when the crime is *discovered* if he is *still* exercising control over the property upon the filing of an information or the return of an indictment within two years of the *last day* he exercised that control. In our opinion, this argument is without merit.

As the record demonstrates, this crime was concealed for more than two years because Barnes, by virtue of his office, took cunning steps to conceal it. First, he purchased the replacement mower in February, 1985, without a trade-in of the old mower, which, according to the undisputed evidence, had a value in excess of $200. Second, on March 4, 1985, he wrote a request to the Gregg County Commissioners' Court to remove the old mower from the inventory list of property in his custody. Third, when he became aware that his request was granted by the commissioners' court, he took the old mower to his home where it remained until it was seized by the county law enforcement officers on November 6, 1987.

We conclude, viewing the evidence in the light most favorable to the verdict, that Barnes formulated his intent to deprive the owner of the mower permanently no later than mid-March 1985. The evidence is undisputed that he exercised personal control over the mower in the summer of 1985, using it to mow his own yard, and when the old engine froze, he personally replaced it with a new motor (short block). Therefore, looking at the evidence in the light most favorable to the prosecution, we conclude that reasonable jurors could not have found beyond a reasonable doubt that the offense was committed within the period of limitations fixed by articles 12.02 and 12.04.

The judgment of conviction is reversed and an acquittal is ordered in this case.