IN THE
TENTH COURT OF APPEALS
No. 10-10-00154-CR


HARRY BROWN HARDAWAY,

                    **Appellant**

 v.

THE STATE OF TEXAS,

                    **Appellee**

————————

**From the 13th District Court
Navarro County, Texas
Trial Court No. 32424-CR**

---

## MEMORANDUM OPINION

---

Harry Brown Hardaway was convicted of possession of a controlled substance with the intent to deliver in a drug free zone. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112, 481.134 (West 2010). He was sentenced to 10 years in prison. Because the evidence is sufficient to support the verdict and because the trial court did not err in failing to grant Hardaway's motion for mistrial, we affirm the trial court's judgment.

### SUFFICIENCY OF THE EVIDENCE

Hardaway first contends the evidence was both legally and factually insufficient to support his conviction. Because the Court of Criminal Appeals has recently determined that the *Jackson v. Virginia* standard is the only standard that a reviewing

court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt, we address Hardaway's sufficiency issue only under this standard. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Hardaway argues that the evidence is insufficient because the State failed to link Hardaway to the contraband found. He does not take issue on appeal with the type of substance or amount found, whether it was intended to be delivered, or whether it was found within a drug free zone. We limit our discussion accordingly.

*Law*

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.; *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). In applying the *Jackson* sufficiency review, we "must consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." *Moff*, 131 S.W.3d at 488 (quoting *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). We consider all evidence actually admitted at trial and give it whatever weight and probative value it could rationally convey to a jury. *Moff*, 131 S.W.3d at 489.

In a possession-of-a-controlled-substance case, the State must prove, either directly or circumstantially, that the accused exercised actual care, custody, control, or management over the contraband and that the accused knew the matter possessed was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010); *Poindexter v.*

*State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When there is no evidence that the accused was in exclusive control of the place where the contraband was found, the State must offer additional, independent facts and circumstances linking the accused to the contraband. *Id*. at 406. Mere presence at the location where contraband is found is, thus, insufficient by itself to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. *Id*. It is the logical force of the combined pieces of circumstantial evidence coupled with reasonable inferences from them, not the number of links, which supports a jury's verdict. *Id*. at 166.

*Facts*

Detective Morris Steward, Captain Elmer Tanner, and Detective Stan Farmer, all with the Navarro County Sheriff's Office, received a call on a narcotics investigation and arrived at the specified location where they saw two young men, Hardaway and Darrius Sparks, standing in front of a burned, uninhabitable house. Hardaway was wearing a baggy jacket, and Steward could see that he had a lot of money in his pocket. Each officer believed that the money contained small bills, such as tens and twenties. Each officer testified that a large amount of money in small bills was, based on their training and their experience, consistent with drug sales. Sparks was also found to have money in his possession.

Tanner conducted a protective sweep of the area and located a cigarette box about 10 to 20 feet from Hardaway and Sparks that contained what field tested to be

cocaine in an amount more than what an individual would use. What brought the box to the attention of Tanner was that it was a clean box that did not appear to have been exposed to the elements for any length of time. Each officer testified that based on their training and experience it was not unusual for an amount of drugs to be located at a distance from a dealer because either the dealer did not want to be caught by law enforcement with the drugs on him or the dealer did not want a potential buyer to know where the drugs were located. A potential buyer would be asked to "make the block," and the dealer would retrieve the drugs while the buyer was not watching. Both Hardaway and Sparks had the same brand of cigarettes on them at the time of their encounter with the officers as the box found containing the cocaine. Neither Hardaway nor Sparks claimed to know anything about the cocaine. Both Hardaway and Sparks were arrested at the scene.

After Hardaway's arrest, the officers took the money seized from both Sparks and Hardaway and secreted each amount separately in an extra room at the Sheriff's Office. A drug dog was called in and alerted to the areas where both amounts of money were located. A second dog was called in for training purposes only and alerted to the same areas. Both dogs were trained to alert to the odors of marijuana, cocaine, methamphetamine, and heroin. The dogs' handler, Deputy Constable Richard Thomas, who had been working with narcotics dogs since 1989, agreed that there was no way to determine which of the four odors the dogs alerted to. Thomas also agreed that there was a possibility that the odor of a narcotic could still be on the money even if the most recent possessor of the money did not handle any narcotics.

*Conclusion*

On appeal, and at trial, Hardaway focuses on what links to the cocaine were not present when Hardaway was arrested, such as the cocaine was not in Hardaway's possession, Hardaway was not under the influence of drugs at the time of his arrest, and he made no attempt to flee, etc. He also contends that the evidence that might be considered a link to the cocaine, such as the money and the drug dog alert, were of no probative value. As noted earlier, we focus on the logical force of the combined pieces of circumstantial evidence, coupled with reasonable inferences from them, which supports a jury's verdict. After reviewing the evidence under the appropriate standard, we find the evidence to be sufficient to support the verdict. Hardaway's sufficiency issue is overruled.

## MOTION FOR MISTRIAL

In his only remaining issue, Hardaway contends that the trial court erred when it failed to grant his motion for mistrial. The request for a mistrial followed testimony by a co-defendant, Darrius Sparks. Sparks was called by Hardaway to testify that when the Sheriff's officers arrived at the scene, Hardaway had just arrived at the scene as well. On re-cross-examination, the following exchange between the State, Sparks, defense counsel, and the Court occurred.

State: Do you not remember telling me that when you would sell those drugs that were, that day that Harry would go inside the house?

Witness: Yeah, I never said that house. I said my grandfather's house next door.

State: He would go inside your grandfather's house; right?

Witness:    Yes, sir.

State:    So how could he be there for just two minutes when you're doing, when you're selling drugs and he's going in – he just happened to go inside every time you were selling drugs?

Witness:    It wasn't his day. I said my grandfather's house. When I caught this charge, I was next door at that house. And Harry had just walked up, that's what I told him.

Defense:    Okay, your Honor, then I'm going to renew my objection to relevance because I think that we're talking about some other time, some other, some other deal. We're not talking here – are you talking about that day or are you talking about some other time?

Witness:    He just asked me, I was just asked if Harry had been around once when I was selling drugs.

Defense:    Okay. Thank you. But the testimony you are giving right now has nothing to do with that day, does it?

Witness:    No, sir.

State:    We'll move on, judge.

Court:    All right. I'll sustain it. Do you want an instruction, [counsel]?

Defense:    Yeah, I want an instruction, your Honor.

State:    We'll, actually we'll withdraw the question and then we'll ask that -

Defense:    Your Honor, I ask for, one, I want to renew my objection.

Court:    Okay.

Defense:    Is that objection granted to the relevance?

Court:    That's, if we're – are we talking about another day?

Defense:     Yeah, things that, apparently it looks to me that –

Court:       That is granted.

Defense:     And I want to ask that it be stricken from, that his testimony with regard to things from other than that day be stricken from the record.

Court:       It will be stricken from the record.  The jury is instructed to disregard any testimony about any other day other than the day in question which is –

*** 

Defense:     February 6th, 2009.

Court:       Okay.

Defense:     And I'm further going to ask for a mistrial, your Honor.

Court:       That mistrial is denied.

When the trial court sustains a defendant's objection, grants a requested instruction to disregard, but denies a motion for mistrial, the issue is whether the refusal to grant the mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).  Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.  *Id*. at 77.  Although this case does not present an improper argument issue, we still use the *Mosley* factors in determining whether the answers given in response to the prosecutor's questions warranted a mistrial: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the

strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

Assuming without deciding that the question asked by the State was improper, the impropriety was not severe. The State's question could be read as asking what Hardaway had done the day of the offense. It was Hardaway's counsel that emphasized the State's question may have been about prior activities. Even the trial court had to clarify what day was being referred to in the question. Further, the trial court struck the testimony and instructed the jury to disregard any testimony about any other day other than the day of the offense. This instruction was clear and specific. Finally, the evidence against Hardaway, even though circumstantial, was sufficient to convict Hardaway even without the question asked by the State. Accordingly, the trial court did not abuse its discretion in denying Hardaway's motion for mistrial. This issue is overruled.

## CONCLUSION

Having overruled each issue properly presented on appeal, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed March 30, 2011
Do not publish
[CR25]