

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00421-CR

———————————————

JEFFREY DEMON RILES, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1551892D

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A jury found Jeffrey Demon Riles guilty of aggravated robbery with a deadly weapon and engaging in organized criminal activity (EOCA). *See* Tex. Penal Code Ann. §§ 29.03(a)(2), 71.02(a). On appeal from his EOCA conviction, Riles complains in two points that (1) the evidence was insufficient to support his conviction for EOCA and (2) the trial court abused its discretion by overruling his objection to the State's gang expert's testifying that Riles committed the robbery "to gain street credibility and notoriety with a gang." Because the evidence is insufficient to support Riles's EOCA conviction, we sustain his first point and render a judgment of acquittal. And because a sufficiency review requires us to consider all evidence that the jury heard, even if some of it was improperly admitted, our disposition of Riles's first point makes it unnecessary for us to consider Riles's second point.

## I. Background

On June 2, 2018, Riles walked into a Fort Worth Valero convenience store, pretended to make a routine purchase, and then jumped onto the counter while pointing a pistol at the cashier. The cashier fled to a nearby business to call the police, and Riles stole the cash box and a few packs of cigarettes. The Valero's surveillance system captured the robbery on video. As that video reflects, Riles wore distinctive clothing when he committed the robbery, and tattoos on the backs of his hands were visible.[1]

---

[1]His black sweatshirt, emblazoned with the blue and red words "Winter League Champs," depicted a cartoon athlete swinging a baseball bat. His baseball cap was also

2

A Fort Worth Police Department surveillance team tracked Riles down through a green Honda Accord registered to his then-girlfriend Kayla Walker and linked him to the June 2 robbery.[2] While the team surveilled Riles over the next nine days, they noticed him driving in the Honda, going to Walmart multiple times, spending the night at Walker's apartment in Arlington, and "standing outside of the apartment complex where he lived."[3] They also observed him meeting with two other individuals at a different complex.

Fort Worth Police arrested Riles on June 11 while he was in the Honda with another man and Walker.[4] Witnesses did not identify the second male by first and last name—although one law-enforcement witness recalled that his first name was Davin, and Walker mentioned that he was a "dude" who lived in her apartment complex—nor did the State ask about this second person's relationship to Riles, to Walker, or to any gang. In the car were the shoes and sunglasses Riles had been wearing when he robbed the Valero clerk. During a later search of Walker's apartment, where Riles kept some

blue and red, featured a cartoon character wielding a pickaxe and a ball, and bore a silver sticker on the brim. No testimony linked any features of his clothing with gang colors or symbolism, although its distinctiveness allowed both the Valero cashier and Riles's former girlfriend to identify Riles from the surveillance video.

[2]The Valero cashier did not see the robber get into a vehicle, nor did he see any vehicle parked outside.

[3]The record is unclear which apartment complex was being referred to.

[4]Walker's then-four-year-old son was also in the car.

personal belongings, the police found the sweatshirt and baseball cap Riles had worn during the robbery.

Although the jury heard and saw evidence about the robbery itself, the police department's surveillance efforts following the robbery, and the items recovered from searching Walker's car and apartment, the State did not present evidence indicating how the police department knew to track Walker's car. The State did not ask Paul Vega—the detective who had asked the surveillance team to track this vehicle—how he had connected the car to Riles.[5] In addition, the jury heard nothing about Riles's activity leading up to and after the robbery. Despite calling Walker to testify, the State never asked her with whom Riles associated or what he did during the day. Although she testified that Riles frequently stayed overnight at her apartment and used her car, the State did not ask her if Riles ever brought anyone to the apartment or if she knew where he went or what he did with her car.

After Riles was in custody, the crime-scene unit photographed his tattoos. At trial, Fort Worth Police Officer Chris McAnulty—a gang expert assigned to the Fort Worth Police Department's gang unit who teaches gang-identification classes and gives

---

[5]The trial court had granted a motion in limine that precluded the State's witnesses from explaining why they were looking for the green Honda. At another point in the trial before calling one of several law-enforcement witnesses to testify, the State explained in a bench conference that the witness had been instructed about "an investigation and not talking about certain other offenses" and mentioned the motion in limine. The jury heard nothing about other offenses in the guilt–innocence phase.

lectures about gang investigations—testified to the importance of tattoos in a gang investigation. Officer Elizabeth Duemig, who photographed Riles's tattoos, testified that tattoos "give us some behavioral indicators or things the individual . . . might be involved with." According to both officers, Riles's torso, arms, and hands sported tattoos teeming with gang imagery.[6]

Officer McAnulty testified that the Fort Worth Police Department maintains a gang database and that Riles has been in that database since 2012 as a member of the Five Deuce Hoova Crips. According to Officer McAnulty, in the early 1990s the Five Deuce Hoova Crips became the first documented Crip group in Fort Worth. Between 70 and 80 confirmed members currently belong to that group, although not every gang member is documented. The Five Deuce Hoova Crips' "bread and butter is illegal narcotics trafficking," that is, "selling drugs, as well as robbery and burglaries."

Officer McAnulty testified that respect and credibility are two of the most important elements to gang members and that a gang member's solo commission of a crime increases his credibility within his gang. When the State asked Officer McAnulty whether Riles had committed the robbery on his own "with the intent to establish,

---

[6]Officer McAnulty testified in great and uncontroverted detail about the meaning of Riles's numerous tattoos and how they reflected Five Deuce Hoova Crips symbolism. Because Riles did not challenge the fact of his Crips membership—beyond eliciting Officer McAnulty's agreement that the tattoos' ages were unknowable, implying that Riles might be a former but not a current Crip—we need not dwell on the specifics.

5

maintain, or participate as a member of a criminal street gang," the defense objected to this question as calling for speculation, but the trial court overruled the objection. Officer McAnulty responded as follows:

> A. Yes, ma'am. To -- to establish yourself in that gang, a lot of times it's about committing crimes. So I would see this crime being committed, and then just establishing that -- that street cred and that notoriety within your known gang members as part of doing this crime.

> Q. [STATE] If you've been documented since 2012, could you also be maintaining that status by continuing to commit or committing an offense like this, just to maintain your status in the group?

> A. Yes, ma'am.

On cross-examination, Officer McAnulty admitted that, hypothetically, a gang member could commit an aggravated robbery unconnected to gang activity, allowing that it's "possible" that "somebody could just do it and not tell the other gang members and just pocket it, right?" On redirect, Officer McAnulty responded, "Yes, ma'am" when asked one barebones question: "D[id] you know the defendant to, as recently as 2018, still be associating with known gang members?" Defense questioning on re-cross yielded Officer McAnulty's simple acknowledgement ("Correct") that he had some undescribed "information" back to the "2012 time frame where [he] ha[d] documentation of Mr. Riles being with those same individuals then and up to 2018, his friends?"

The jury found Riles guilty of both aggravated robbery with a deadly weapon and EOCA based on the same aggravated robbery. At punishment, Riles pleaded true to a

6

habitual-offender notice, and the jury assessed his punishment at life in prison. The trial court sentenced Riles in accordance with the jury's verdict, entering judgments on each conviction to reflect concurrent life sentences. Riles timely appealed and challenges the sufficiency of the evidence supporting his EOCA conviction and the admission of Officer McAnulty's testimony. He does not complain about his aggravated-robbery conviction or sentence.

## II. Sufficiency of the Evidence

In his sufficiency point, Riles contends that the State obtained an EOCA conviction solely because of his gang membership rather than by connecting the Valero robbery to that membership as the State was required to do. According to Riles, expert testimony about gaining respect through committing solo crimes and about Riles's having had contact with gang members in the same year as the robbery does not, without more, create the required nexus between the crime and Riles's gang membership. On this record, we agree.

### A. Standard of review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

7

from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the

8

defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

And as especially pertinent here, where Riles has raised both a sufficiency point and an erroneously-admitted-evidence point, our *Jackson* review means that we "*must consider all evidence* which the jury was permitted, whether rightly or wrongly, to consider." *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) (quoting *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988)); *see Ward v. State*, No. 2-08-283-CR, 2009 WL 4755181, at *2 (Tex. App.—Fort Worth Dec. 10, 2009, pet. ref'd) (mem. op., not designated for publication) ("In conducting a legal[-]sufficiency review, we are required to review *all* evidence admitted at trial, even improperly admitted evidence."). A defendant "need not object to the admission of evidence in the trial court to preserve [an evidentiary-sufficiency] issue." *Moff*, 131 S.W.3d at 488.

## B. Hypothetically correct jury charge

Here, the indictment charged that Riles, "with the intent to establish, maintain, or participate as a member of a criminal street gang, commit[ted]" aggravated robbery by intentionally or knowingly threatening or placing the Valero cashier in fear of imminent bodily injury or death while committing a theft and using a firearm. *See* Tex. Penal Code Ann. §§ 29.03(a)(2), 71.02(a)(1). The jury charge, which Riles does not challenge on appeal, tracked the indictment.

The Texas Penal Code provides that a person engages in organized criminal activity "*if*, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or *as a member of a criminal street gang*, the person commits or conspires to commit" a specified predicate offense—here, aggravated robbery. *Id.* § 71.02(a)(1) (emphases added). The "'intent to establish, maintain, or participate'" element does not apply when a defendant is charged "as a member of a criminal street gang" but instead "applies only to the phrase that immediately follows it—'in a combination or in the profits of a combination.'" *Zuniga v. State*, 551 S.W.3d 729, 735 (Tex. Crim. App. 2018) (quoting Tex. Penal Code Ann. § 71.02(a)); *see Villa*, 514 S.W.3d at 232; *see also Baker v. State*, No. 02-17-00193-CR, 2020 WL 1808292, at *6 (Tex. App.—Fort Worth Apr. 9, 2020, no pet.) (per curiam) (mem. op., not designated for publication). Riles was not indicted or charged with the "combination" element.

10

A hypothetically correct jury charge here would thus require the State to prove that Riles, as a member of a criminal street gang, committed aggravated robbery. *See Zuniga*, 551 S.W.3d at 735; *Villa*, 514 S.W.3d at 232; *Jenkins*, 493 S.W.3d at 599; *see also* Tex. Penal Code Ann. § 71.02(a)(1). To prove the "as a member" element, the State would have to prove that Riles was acting as a member of a group of "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." *Zuniga*, 551 S.W.3d at 735 (quoting Tex. Penal Code Ann. § 71.01(d)). "'[A]s' in the phrase 'as a member of a criminal street gang' [requires] proof that the defendant was acting '[i]n the role, capacity, or function of' a gang member at the time of the offense." *Id.* at 736 (quoting *As*, American Heritage College Dictionary (3d ed. 1993)). A conviction based on the hypothetically correct jury charge here, then, would require proof that Riles was acting in the role, capacity, or function of a gang member at the time of the robbery. *See id.*; *see also Baker*, 2020 WL 1808292, at *6.

## C. Acting "as a member of a criminal street gang"

To prove that a defendant committed an underlying offense in his role, capacity, or function as a member of a criminal street gang, "the evidence need only be sufficient to show some nexus or relationship between the commission of the underlying offense and the defendant's gang membership." *Zuniga*, 551 S.W.3d at 739. The EOCA statute does not require proof of a gang member's particular motivation for committing an offense. *Id.*; *see Castro v. State*, No. 02-18-00474-CR, 2020 WL 98132, at *2 (Tex. App.—

11

Fort Worth Jan. 9, 2020, pet. ref'd) (mem. op., not designated for publication). A jury may draw a reasonable inference that a defendant was acting in his capacity as a gang member in committing the underlying offense and may reject the possibility that he acted independently of his gang membership. *See Zuniga*, 551 S.W.3d at 739. "The fact that it was theoretically possible that there was some non-gang[-]related motive for the [crime] is not the proper inquiry in a sufficiency review in which we are bound to defer to the factfinder's weighing of the evidence and its drawing of reasonable inferences." *Id.* (citing *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). But merely finding that the defendant is a gang member does not permit a jury to convict him of EOCA. *Id.* at 734.

**D. Analysis**

Riles's argument that the evidence was insufficient to convict him on the EOCA charge contrasts that evidence with the evidence in two of our cases[7] involving a much clearer factual nexus between gang membership and commission of the underlying crime as a gang member.

In the first case, we held the evidence sufficient to support the EOCA conviction. *Castro*, 2020 WL 98132, at *3. There, Castro had stolen a truck under circumstances suggesting that multiple people were involved; Castro then used the truck

---

[7]Because the court of criminal appeals clarified the Section 71.02(a) "as a member" analysis in 2018, we discuss only cases decided after *Zuniga*.

to steal construction materials, a type of theft common to his East Side Latin Kings gang; and the police found the truck—and arrested Castro—in front of a business known for buying stolen construction supplies and located in East Side Latin Kings gang territory. *Id.* at *1–3. Castro also sported gang tattoos, had been a confirmed Latin Kings gang member for more than a decade, and had created recent social-media posts that reinforced his gang membership. *Id.*

The evidence in our more recent case presented an even stronger nexus between the underlying crime and the defendant's committing it in his capacity as a gang member. *See Baker*, 2020 WL 1808292, at *6–8. Baker was president of the Fort Worth chapter of a motorcycle gang, the Bandidos, at the time that a murder and multiple assaults were committed at a local bar where he was present. *Id.* at *7. The State's gang expert testified that the Bandidos' rigid hierarchical structure was such that Baker's presence signaled that he knew about and had blessed the crimes; other evidence showed that the incident involved a rival gang with which the Bandidos had a bone to pick and occurred in gang territory, that multiple members of both Baker's and the rival gang participated in the incident, and that Baker's tattoos and vest were rife with gang symbolism. *Id.* at *7–8.

Our sister court in El Paso has also analyzed *Zuniga*'s "nexus" requirement and found the following evidence sufficient to support an EOCA conviction: the defendant and other individuals involved in committing two murders were members of the Barrio Azteca gang, as were the victims; the defendant himself testified that the murders

13

resulted from an internal power struggle over the gang's leadership, and he described a "rift" between one victim and two others who were separately found guilty of the murders; a higher-up in the gang had "green-lighted" the murder of one of the victims based on suspicions that the victim and his wife were "snitches"; and the defendant's girlfriend testified that he had left the house with two other gang members for a "meeting" and returned later to tell her that they had "had to kill" the victims. *Rodriguez v. State*, No. 08-16-00118-CR, 2018 WL 3372637, at *8, *10 (Tex. App.—El Paso July 11, 2018, pet. ref'd) (not designated for publication).

Last year the El Paso court faced another EOCA appeal and again found the evidence sufficient. *See Lopez v. State*, 615 S.W.3d 238, 251–52 (Tex. App.—El Paso 2020, pet. ref'd). In *Lopez*, the defendant was at a bar with fellow Barrio Azteca members when they argued with and assaulted two ex-Aztecas who were at the same bar. *Id.* at 244–45. Membership in the Barrio Azteca gang—one of El Paso's largest, with some 3,000 members—is a "lifetime commitment," and "[a]s punishment for leaving the group, gang leaders are known to have demanded that current members assault or even kill ex-members on sight." *Id.* at 244. Lopez himself was a "high-ranking member." *Id.* at 247. In light of other witness testimony suggesting that Lopez and

another Azteca joined together in beating one of the victims, the evidence sufficed to affirm Lopez's EOCA–assault conviction.[8] *Id.* at 251–52.

The nexus between gang membership and commission of the underlying crime as a gang member need not, however, be so straightforward as in the above cases. In a Beaumont court of appeals case, for example, police opened an investigation on a bank because customers were frequently robbed after leaving the bank, a crime sometimes called "bank jugging." *Singleton v. State*, No. 09-18-00381-CR, 2020 WL 6295088, at *1 (Tex. App.—Beaumont Oct. 28, 2020, pet. ref'd) (mem. op., not designated for publication). While the investigation was ongoing, Singleton—who was not acting alone—tried to steal a bag of money from a plainclothes officer's unmarked vehicle that was being used as bait. *Id.* Social-media posts indicated that Singleton had previously been associated with at least two different criminal street gangs that participated in bank jugging, Singleton had a prior conviction for a robbery involving bank jugging, and the individual who drove the getaway car was also a gang member. *Id.* at *1, *3–4. The appellate court affirmed Singleton's EOCA conviction. *Id.* at *4.

Here, the jury could unquestionably have inferred that Riles was a member of a criminal street gang. It heard testimony about Riles's tattoos, his inclusion in the Fort Worth gang database as a Five Deuce Hoova Crip, and his association with other gang

---

[8]Lopez's conviction for EOCA–aggravated assault for pulling and firing a handgun was also upheld. *Id.* at 252.

15

members over the years. But the jury did *not* hear evidence linking Riles's robbing the Valero to anything suggesting that he did so in his role, capacity, or function as a gang member. The closest possible link was Officer McAnulty's expert testimony about how gang members gain and maintain respect by sometimes committing solo crimes and his broad statement that Riles had been associating with (unidentified) gang members at some unspecified time(s) in 2018, the year of the robbery.

Beyond that, and unlike the far more extensive "nexus" evidence in *Baker*, *Castro*, *Rodriguez*, *Lopez*, and even *Singleton*, here the evidence

- did not link Walker, her car, or her Arlington apartment, or Riles's use of her car or apartment, to any gang activity;

- did not link the second man arrested with Riles and Walker to gang membership or activity;

- did not place any other gang member at or near the Valero;

- did not suggest that the Valero's location was near or somehow significant to Five Deuce Hoova Crips' territory and activities;

- did not suggest that the way in which Riles robbed the Valero was similar to other of the gang's robberies;

16

- did not suggest that robbing convenience stores is a common theme for the Five Deuce Hoova Crips;[9]

- did not connect Riles's distinctive clothing with gang insignia, symbols, or colors, or with Riles's sending a tacit message or shout-out to any fellow gang members who might see the surveillance video; and

- did not connect Riles to any gang activity or gang associates in the days leading up to and following the robbery.

Although we recognize our duty to defer to the factfinder, we cannot defer to facts that weren't proved nor to inferences that aren't reasonable. Viewing the EOCA-related evidence in the light most favorable to the verdict—evidence consisting entirely of Officer McAnulty's conclusory opinion that Riles intended to act as a gang member in carrying out this solo robbery[10]—we conclude that a rational factfinder could not have found beyond a reasonable doubt that Riles was acting pursuant to his role or

---

[9]This gang's "bread and butter" was described as "illegal narcotics trafficking," followed by robbery and burglary. Officer McAnulty did not testify that any particular types of businesses are favorite targets of the Five Deuce Hoova Crips.

[10]"Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Vela v. State*, 209 S.W.3d 128, 134 (Tex. Crim. App. 2006) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)); *see Wright v. State*, 618 S.W.3d 887, 892 (Tex. App.—Fort Worth 2021, no pet.) (same). A corollary principle is that "a conclusory expert opinion based upon insufficient facts is not probative evidence." *Walker v. State*, Nos. PD-1429-14, PD-1430-14, 2016 WL 6092523, at *15 (Tex. Crim. App. Oct. 19, 2016) (not designated for publication).

capacity as a gang member at the time of the offense. *See Zuniga*, 551 S.W.3d at 734, 739 (noting that Section 71.02(a) "would not permit conviction on a bare finding of the defendant's status as a gang member" but rather requires "proof that the defendant engaged in the underlying offense 'as a member of a criminal street gang,' in the sense that he was acting pursuant to his role or capacity as a gang member at the time that he committed the offense"). We thus conclude that the evidence was insufficient to support Riles's EOCA conviction, and we sustain his first point.

Our disposition of Riles's sufficiency point makes it unnecessary for us to consider his second point, in which he complains that the trial court abused its discretion by overruling his "speculation" objection to Officer McAnulty's testimony regarding intent. Because our sufficiency review requires us to review *all* evidence admitted at trial, even improperly admitted evidence, *see Jenkins*, 493 S.W.3d at 599, and even if unobjected to, *see Moff*, 131 S.W.3d at 488, we have taken into account what Officer McAnulty testified to—properly or improperly—and have still concluded that the EOCA evidence was insufficient.

### III. Conclusion

Having sustained Riles's first point, we reverse the trial court's judgment convicting him of EOCA under Section 71.02(a) of the Texas Penal Code and render a judgment of acquittal on that count. *See* Tex. R. App. P. 43.2(c), 51.2(d); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S. Ct. 2151, 2154–55 (1978); *Burks v. United States*, 437 U.S. 1, 16–18, 98 S. Ct. 2141, 2150–51 (1978); *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim.

18

App. 2013). Riles's separate judgment of conviction for aggravated robbery with a deadly weapon, which he has not challenged, is unaffected by our holding. *See Garza v. State*, 213 S.W.3d 338, 352 (Tex. Crim. App. 2007) (noting that a defendant charged both with EOCA and with committing the underlying offense can be charged and punished for both in the same proceeding).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 23, 2021