*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★       ★ ★ ★

# OPINION

No. 04-08-00447-CR

Hector **CHAVARRIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2007-CRS-358-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed: November 25, 2009

AFFIRMED

Defendant, Hector Chavarria, was convicted of aggravated sexual assault of a child and sentenced to life imprisonment and a fine of $10,000. On appeal, he asserts the expert testimony of a psychologist specializing in the area of child sexual abuse was unreliable pursuant to Texas Rule of Evidence 702 because the expert did not testify about the rate of error of his methodology, and because his methodology had not been submitted for peer review. We affirm.

## BACKGROUND

Defendant was charged with the aggravated sexual assault of T.E., a child younger than fourteen years of age. At trial, seven-year-old T.E. testified she was spending the night at her friend's apartment when she awoke to find defendant moving her underwear to the side and licking her "middle" part. According to T.E., defendant then touched her middle part with his hands.

At trial, Dr. Gregorio Pina III, a licensed psychologist and licensed sex offender treatment provider, testified for the State. He testified that about a third of his practice involves children who claim sexual abuse and another third of his practice involves working with people who are referred by the courts for violent offenses or sex offenses. Dr. Pina has diplomates[1] in forensic psychology, sexual abuse psychology, and police psychology; is "a life fellow for The American College of Forensic Examiners in the area of clinical forensic psychology"; and has presented to the state psychology association on the area of child sexual abuse and, on two different occasions, to the Society for Police and Criminal Psychology at the association's national conference. In 1998, Dr. Pina received the "Team Excellence Award" by the Children's Advocacy Center of Texas for being the "Outstanding Mental Health Worker of the Year."

At trial, the State offered Dr. Pina as an expert in clinical forensic psychology dealing with child sexual abuse and as an expert in sex offender treatment. Defendant had no objection to Dr. Pina's qualifications, but did object to Dr. Pina's methodology, claiming that it was unreliable. The trial court overruled the objection and allowed Dr. Pina to testify.

---

[1] Dr. Pina testified that "[a] diplomate is a status that is bestowed on you by your peers, or the field that you're in, for . . . contributions to the field, and it's basically a recognition that you've gone beyond the ordinary work, in order to contribute to the science or to the field or the community that you're serving."

DISCUSSION

Texas Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Under Rule 702, the trial court has the responsibility of determining whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). We review a trial court's ruling on the admissibility of scientific expert testimony for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

In determining the admissibility of novel scientific evidence pursuant to Rule 702, the trial court must consider the standard enunciated in *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992): "whether [the] testimony will help the trier of fact understand the evidence or determine a fact in issue." "[T]he trial court's first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results," because "[u]nreliable . . . scientific evidence simply will not assist the [jury] to understand the evidence or accurately determine a fact in issue." *Id.* Thus, pursuant to *Kelly*, before scientific evidence may be admitted under Rule 702, the proponent must persuade the trial court, by clear and convincing evidence, that the evidence is reliable and therefore relevant. *Id.* at 573. Here, defendant contends Dr. Pina's testimony was unreliable.

To demonstrate reliability, a proponent must satisfy three criteria: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Id.* Additionally, the *Kelly* Court listed seven non-

exclusive factors a court could consider in determining reliability: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person who applied the technique on the occasion in question. *Id.*

However, soon after *Kelly*, the Texas Court of Criminal Appeals in *Nenno v. State* was faced with the issue of whether the expert testimony of a special agent in the Behavioral Science Unit of the FBI, who specialized in studying the sexual victimization of children and who planned to testify about the defendant's future dangerousness, should be subject to the *Kelly* factors. 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). When faced with this issue, the Court of Criminal Appeals quickly recognized that the *Kelly* factors used to prove reliability could "become cumbersome under certain circumstances." *State v. Medrano*, 127 S.W.3d 781, 785 (Tex. Crim. App. 2004) (discussing *Nenno* and the *Kelly* factors). Thus, in *Nenno*, the Court stated that although the general principles enunciated in *Kelly* apply to nonscientific expert testimony, "the specific factors outlined . . . may or may not apply depending on the context." 970 S.W.2d at 560. The *Nenno* Court explained that "[w]hen addressing fields of study aside from the hard sciences, *such as the social sciences or fields that are based primarily upon experience and training* as opposed to the scientific method, *Kelly*'s requirement of reliability applies but with less rigor than to the hard sciences." *Id.* at 561 (emphasis

added). According to the Court, although it was not attempting "to develop a rigid distinction between 'hard' and 'soft' sciences,[2] or nonscientific testimony," it was offering three inquiries more appropriately tailored to analyze soft sciences where "[t]o speak of the validity of a 'theory' or 'technique' . . . may be roughly accurate but somewhat misleading." *Id.* at 560-61. Thus, "[w]hen 'soft' sciences are at issue, the trial court should ask: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field." *Id.* at 561; *see also Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005). "These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science." *Nenno*, 970 S.W.2d at 561. "[H]ard science methods of validation, *such as assessing the potential rate of error or subjecting a theory to peer review*, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences." *Id.* (emphasis added). "However, because the objective of both *Kelly* and *Nenno* was to ensure the reliability of expert testimony and scientific evidence, *Nenno* '[did] not categorically rule out employing [the *Kelly*] factors in an appropriate case.'" *Medrano*, 127 S.W.3d at 785 (quoting *Nenno*, 970 S.W.2d at 561 n. 9). Here, defendant argues that this case is an appropriate one to apply *Kelly*'s factors relating to "hard" sciences.

### A. Do the *Kelly* factors apply in this case?

According to defendant, *Kelly*'s factors should apply to Dr. Pina's testimony because his methodology involves more than "just observation," and instead "involves starting from a question

---

[2] The Court of Criminal Appeals has explained that "hard" sciences are those "areas in which precise measurement, calculation, and prediction are generally possible, includ[ing] mathematics, physical science, earth science, and life science," while "soft" sciences "are generally thought to include such fields as *psychology*, economics, political science, anthropology, and sociology." *Weatherred*, 15 S.W.3d at 542 n.5 (emphasis added).

(has this child been sexually abused?), assessing the question (proving treatment, looking for signs of abuse), to making a diagnosis." And, according to defendant, in applying those *Kelly* factors, Dr. Pina's testimony is unreliable because Dr. Pina testified he did not know the rate of error of his technique and had not submitted his methodology for peer review. In response, the State argues *Nenno*'s less stringent standard relating to the "soft" sciences should apply to Dr. Pina's testimony, and that under *Nenno*'s standard, the trial court did not abuse its discretion in determining Dr. Pina's testimony was reliable.

At trial, Dr. Pina testified in detail about the methodology he uses. According to Dr. Pina, he relies on practice guidelines "put out by the American Professional Society on the Abuse of Children," one of which is called the "Psychological Evaluation of Suspected Sexual Abuse in Children," and another of which is called "Investigative Interviewing in Cases of Alleged Sexual Abuse." He also relies on a textbook written by "Saddock and Kapler," which has "procedures to follow when evaluating children of different ages with specific or different backgrounds, intellectual levels, and language development." He also relies on handbooks by the American Psychological Association, one of which is called the "Handbook on Clinical Psychology" and another on forensic psychology. Dr. Pina testified that these texts are followed by other psychologists in the field of psychology and "also, specifically, in the area of child sexual abuse."

Further, Dr. Pina testified that as of December 2007, he had seen more than 6,320 alleged victims of sexual abuse, four-fifths of which were children. He saw T.E. on six different occasions, and on those occasions, he followed protocols and procedures included in the different texts and articles upon which he relies. Specifically, Dr. Pina testified that when evaluating a child, he goes to the waiting room, introduces himself to the child and parents, and then begins observing the child

interact with the parents. After observing the relationship between the child and the parents in the waiting room, Dr. Pina brings them into a room and interviews the child with the parents present because "children don't have a history of things - of information I require." Dr. Pina takes a detailed history of the child, starting from the mother's pregnancy with the child. Then, he takes a developmental history to see if the child reached all his milestones at a normal age. After taking a developmental history, Dr. Pina takes a detailed medical history of the child. He then inquires into the child's educational history and how the child has developed socially. After taking these detailed histories, Dr. Pina asks the parents about their major concerns. He then looks at family discipline and whether the parent is consistent or inconsistent with discipline. Dr. Pina next considers the child's home life: whether the child has been exposed to pornography or other sexual behaviors, whether members of the family abuse drugs, and whether there are other "family dysfunctions." Finally, Dr. Pina looks for the "major stressors" in the child's life.

Finally, Dr. Pina "pushes" the parent out of the interview and performs a mental status examination of the child alone to "detect deception," "exaggeration," or "minimizing." In performing the mental examination of the child, Dr. Pina gathers information relating to the child's appearance, demeanor, and hygiene. He considers whether the child makes eye contact, the child's emotional life, and the child's mood.

After performing the mental status examination, Dr. Pina goes to the next area of his exam, which he calls "sensorium." Dr. Pina asks himself whether the child's brain is picking up what the child is "seeing, smelling, feeling, and hearing." Dr. Pina next considers the child's memory and whether the child's memory is accurate. He considers the child's intelligence and thought processes. He looks at whether the child wishes to hurt himself or others. Then, Dr. Pina considers whether the

child has "good insight as to what the problem is that he's bringing up, and at the same time with that is functional judgment – what's his judgment about the problem that he's presenting?" Finally, Dr. Pina considers the child's moral development.

When asked whether there is one test he could use on every single child who comes into his office claiming sexual abuse, Dr. Pina testified there is not. Dr. Pina explained,

> I may have a child who [i]s four years old and comes from Honduras and doesn't speak English. I may have a very bright child who [speaks] three languages. I may have a child who has not developed because of poverty or lack of opportunity. I may have a child who has come from a very battered background, and children who come from exceptional families. And there is just not one way to interview and come up with conclusions, given ages, language of development – rather, stages of development, language development, and other factors. So we apply the science as best as possible to the individual. But, there's enough information with classes of people, so you can do your work well within individuals.

In other words, a "rate of error" would not be applicable to Dr. Pina's methodology, as there are too many variables to consider.

In reviewing Dr. Pina's testimony regarding his methodology, we conclude Dr. Pina's methodology is not an appropriate case for employing the *Kelly* factors. Instead, we believe it is the kind of "soft" science "based primarily upon experience and training" referred to by *Nenno*, 970 S.W.2d at 561. *See Russeau*, 171 S.W.3d at 883-84 (applying *Nenno*'s "soft" sciences standard in considering the reliability of licensed psychologist's testimony that appellant posed a risk of future threat to society); *Dennis v. State*, 178 S.W.3d 172, 181-82 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (applying *Nenno*'s "soft" sciences standard to child psychotherapist and social worker who testified about general characteristics of a child victimized by sexual assault); *Jensen v. State*, 66 S.W.3d 528, 542-43 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (applying *Nenno*'s "soft" sciences standard to testimony of child advocacy worker who testified about the difficulty of

detecting sexual abuse of children by merely observing the relationship between the victim and perpetrator); *Hernandez v. State*, 53 S.W.3d 742, 744, 750-51 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (applying *Nenno*'s "soft" sciences standard to child advocacy worker who testified about "Child Abuse Accommodation Syndrome").[3] We, therefore, conclude the *Kelly* factors do not apply to Dr. Pina's testimony and that *Nenno*'s "soft" sciences standard should apply.

### B.  Application of *Nenno*'s "soft" sciences standard

Pursuant to *Nenno*, in determining whether Dr. Pina's testimony was reliable, the trial court should have inquired about the following: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field. *Nenno*, 970 S.W.2d at 561. First, the Texas Court of Criminal Appeals has recognized research concerning the behavioral characteristics of sexually abused children as a legitimate field of expertise. *See Cohn v. State*, 849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993); *Duckett v. State*, 797 S.W.2d 906, 914-17 (Tex. Crim. App. 1990); *Jensen*, 66 S.W.3d at 543; *Hernandez*, 53 S.W.3d at 751. Dr. Pina testified he specializes in the area of child abuse. Second, Dr. Pina's testimony relating to his examination of T.E. was within the scope of that field of expertise. Third, Dr. Pina testified he relies on texts accepted and used by other psychologists in the field of psychology and in the area of child sexual

---

[3]  We note that a number of courts of appeals have also applied *Nenno* to "soft sciences" in civil cases. *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 649-51 (Tex. App.—Austin 2005, pet. denied) (in parental termination case, applying *Nenno* standard to determine whether social worker was qualified to conduct and testify in support of court-ordered home study); *In the Int. of A.J.L.*, 136 S.W.3d 293, 297-301 (Tex. App.—Fort Worth 2004, no pet.)(in parental termination case, applying *Nenno* standard to determine reliability of testimony by licensed professional counselor); *In the Int. of G.B.*, No. 07-01-0210-CV, 2003 WL 22327191, *2-6 (Tex. App.—Amarillo Oct. 10, 2003, no pet.) (not designated for publication) (in parental termination case, applying *Nenno* standard to determine reliability of testimony by variety of witnesses including that of licensed chemical dependency counselor, licensed professional counselor, and marriage and family therapist).

abuse. He also testified that on the occasions he saw T.E., he followed the protocols and procedures included in those texts.

Finally, we note that defendant criticizes Dr. Pina for employing, what defendant calls, a "patchwork of techniques." However, this criticism goes to the weight, not the admissibility, of Dr. Pina's testimony. *See Zone v. State*, 118 S.W.3d 776, 777 (Tex. Crim. App. 2003) (holding defendant's attack on expert's use of scientifically accepted method of "sampling" went to the weight of the expert evidence, not its admissibility); *Aguilera v. State*, No. 04-05-00622-CR, 2007 WL 120562, at *3 (Tex. App.—San Antonio 2007, pet. ref'd) (explaining that defendant's criticism that Dr. Pina (the same Dr. Pina who testified here) did not use standardized tests in evaluating child abuse victim went to the weight and not the admissibility of Dr. Pina's testimony). We, therefore, hold the trial court did not abuse its discretion in determining that Dr. Pina's testimony was reliable.

## Conclusion

We overrule defendant's issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Publish