

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00145-CR

_____

MARK HINTON O'NEAL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2013-C0383

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Mark Hinton O'Neal was convicted by a jury of theft of property in an amount of $1,500.00 or more but less than $20,000.00. He was sentenced to twenty-four months' confinement in a state jail facility and was ordered to pay a $3,000.00 fine. In a single point of error, O'Neal argues on appeal that the evidence was legally insufficient to support his conviction. Because we find that the jury's verdict of O'Neal's guilt was supported by legally sufficient evidence, we affirm the trial court's judgment.

## I.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found beyond a reasonable doubt that O'Neal was guilty of theft of property in an amount of $1,500.00 or more but less than $20,000.00. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.— Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, the State alleged that on or about April 17, 2013, O'Neal unlawfully appropriated both diesel fuel and oil from owner Weiner Trinity in an amount of $1,500.00 or more but less than $20,000.00, with intent to deprive Trinity of the property. *See* TEX. PENAL CODE ANN. § 31.03(a) (West 2011). Thus, the State had to prove that (1) O'Neal, (2) with intent to deprive Trinity of the fuel and oil, (3) unlawfully appropriated them (4) without Trinity's effective consent. *See id.*; *see also Ehrhardt v. State*, 334 S.W.3d 849, 853 (Tex. App.—Texarkana 2011, pet. ref'd). With the elements of the offense in mind, we examine the record to determine whether the State met its burden of proof.

## II. The Evidence

The State's key witness at trial was Mikeal Adams, O'Neal's drunken accomplice during the theft. Adams testified that he and O'Neal had both previously worked for Trinity Disposal & Trucking, LLC, a salt water disposal and trucking company with multiple locations, including one owned by Weiner Trinity (Weiner Unit). Adams described the events that eventually led to O'Neal's arrest and admitted that they both "got caught up stealing diesel" from the company.

3

Adams testified that he became intoxicated at his girlfriend's house and asked O'Neal to drive him home. O'Neal arrived in a white Ford pickup truck with a trailer that contained plastic vessels that are typically used to transport large quantities of water. Adams testified that instead of dropping him at home, O'Neal drove Adams to the Weiner Unit, hooked a diesel pump to one of its 3,000-gallon diesel tanks, and filled the vessels on his trailer. Adams, who claimed that he did not remember the events of the night precisely due to his state of intoxication, testified that he might have assisted O'Neal in transferring the diesel from the Weiner Unit's tank to the plastic containers on O'Neal's trailer. According to Adams, while they were driving away, O'Neal called someone on his cell phone and offered to sell the diesel fuel to him. Shortly thereafter, they were pulled over by a police officer who had initiated a traffic stop. Because he had an outstanding warrant as a result of his failure to timely pay a speeding ticket, Adams admitted that he fled O'Neal's vehicle as soon as the truck came to a stop.

Christopher Welk, a deputy with the Panola County Sheriff's Office, testified that on April 17, 2013, at approximately 4:15 a.m., he stopped a white truck because it was being driven erratically and because there were no taillights or tag on the trailer. Welk ran the white Ford truck's license plate number and learned that the plate belonged to a black Dodge pickup truck. Welk approached O'Neal and asked him to exit the vehicle. According to Welk, O'Neal appeared "overly nervous" and began pacing back and forth from the truck to the rear of the trailer.

Welk testified that he observed the large vessels and a fifty-five-gallon drum on the trailer and became curious of their contents because they were attached by "crude tubing,"

4

ratchet straps, tie-downs, and other items not generally used to transport these types of containers. Welk testified that the leaky plastic vessels contained a liquid that "had an off tint to it" and smelled "like gasoline of some sort, diesel fuel." The 300-gallon vessels were marked in 100-gallon increments. Welk also noticed a small pump with twenty-to-thirty feet of hose "that still had diesel that hadn't evaporated that was still wet to the touch." Based on the size of the vessels and tank, Welk estimated that O'Neal was hauling approximately 700 gallons of fluid, in addition to the fifty-five-gallon drum that was "fairly full of liquid."[1] According to Welk, when asked to explain what he was hauling, O'Neal said that his boss had asked him to pick up the trailer, which had already been loaded prior to his arrival. However, O'Neal was unable to describe the location where he had obtained the trailer. Welk arrested O'Neal for placing a license plate from another truck onto his truck. O'Neal's truck and trailer were towed, and its contents were inventoried.

Investigator James Graham Ferris testified that in addition to the vessels in the trailer, there was an L-shaped tank in the bed of the truck with an electric diesel pump that carried approximately 100 gallons of fuel. During the inventory, Ferris verified that the liquid in the vessels and tank was diesel fuel. Although he did not measure the volume of the diesel fuel, Ferris estimated a total volume of 700 gallons. He testified that the drum contained an oily substance, but did not verify the type of substance with certainty. Adams' wallet was also found in the truck.

---

[1]Welk's volume calculation was challenged during cross-examination. He also testified that he was not aware of what was actually contained in the fifty-five gallon drum.

5

Adams testified that he was stopped for a traffic violation a few days after the incident and was arrested on the outstanding warrant for failure to pay a speeding ticket. After his arrest, Adams was contacted and interviewed by Ferris. Adams admitted his involvement and agreed to assist Ferris and investigator Lanny Joe Mims in pinpointing the location of the Weiner Unit.

Joe Hawkins, an oil-field consultant and Trinity's former general manager, testified that on or about May 7, 2013, he became aware that approximately 900 gallons of diesel fuel and a drum of oil were missing from the Weiner Unit. According to Hawkins, the price of diesel fuel at that time was around $3.69 to $3.79 per gallon. Thus, using the lower estimated price, the cost of 407 gallons of diesel fuel would have exceeded $1,500.00. Hawkins also testified that a fifty-five-gallon drum of oil cost between $650.00 and $800.00.

After hearing the evidence, the jury found O'Neal guilty of theft of property in an amount of $1,500.00 or more but less than $20,000.00.

III.    **Analysis**

On appeal, O'Neal argues that the evidence is insufficient because (1) the State failed to introduce audio or video recordings of the arrest or fingerprint evidence, (2) law enforcement officers never measured the exact volume of the diesel fuel, (3) Hawkins' testimony that he did not notice the missing fuel and oil until May 7, 2013, was insufficient to establish the date of the theft, and (4) Adams was not a credible witness.[2]

First, the State is not required to introduce specific types of evidence in order to establish the guilt of an actor, and circumstantial evidence, which has the same probative value as direct

_____

[2]O'Neal does not suggest that Adams' testimony was not corroborated.

evidence, can be sufficient to establish guilt on its own. *See Jones v. State*, 229 S.W.3d 489, 496 (Tex. App.—Texarkana 2007, no pet.). Here, Adams' testimony unambiguously implicated O'Neal in the crime. Additionally, if an accused is found in possession of recently stolen property and, at the time of his arrest, fails to make a reasonable explanation showing his honest acquisition of the property, the jury may draw an inference of guilt. *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). Welk's testimony established that O'Neal was in possession of the stolen property during the traffic stop. Although O'Neal claimed that he was transporting the stolen property at the request of his boss, Welk testified that he was unable to verify O'Neal's story and that O'Neal was unable to describe the particular location of the alleged pick up. Whether a defendant's explanation for possession of recently stolen property is true or reasonable is an issue to be determined by the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.); *Marmon v. State*, 704 S.W.2d 90, 91 (Tex. App.—Dallas 1985, pet. ref'd). We find that evidence was legally sufficient to support the jury's finding on the element of identity.

As for the other elements of the offense, Adams' testimony that O'Neal planned to sell the diesel fuel, coupled with the manner in which it was appropriated, established that the property was taken from Trinity unlawfully, without its effective consent, and with intent to deprive Trinity of the property. Yet, in his second argument, O'Neal challenges whether the State proved the amount of the theft since the exact volume of diesel fuel was not measured. Although Ferris and Welk testified that the two 300-gallon vessels were not completely full,

Mims and Adams both testified that the vessels were full. While there was some inconsistency on this matter, a rational jury could find that the vessels and the 100-gallon tank contained, collectively, at least 407 gallons of diesel fuel, which, in light of Hawkins' testimony, was sufficient to support a finding that the stolen diesel fuel alone was worth more than $1,500.00.

As for O'Neal's third argument, the State is not required to allege a specific date in an indictment. *Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997). Alleging that an event occurred "on or about" a certain point in time is sufficient, so long as the act occurred before the date of the presentation of the indictment, but within the relevant limitations period. *Id.* at 256; *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988). Here, even though the State was not required to prove that the offense occurred on April 17, 2013, both Welk and Adams testified that the offense occurred on that date. O'Neal's third argument is without merit.

In his fourth and final argument, O'Neal simply states that Adams' testimony was not credible. However, it was the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13. The jury was able to observe Adams' demeanor at trial and was in the best position to assess his credibility. Since we defer to the jury's credibility determinations, we decline O'Neal's invitation to sit as the thirteenth juror for the purpose of reevaluating Adams' credibility. *See Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014).

Viewing the evidence in a light most favorable to the verdict, we find it legally sufficient to establish the elements of the theft offense as alleged in the State's indictment. Accordingly, we overrule O'Neal's sole point of error.

8

## IV.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    January 30, 2015
Date Decided:     March 18, 2015

Do Not Publish